Moses NEWTON and Bill FITZGERALD *v.*
Felix Allen CLARK

79-30                               582 S.W. 2d 955

Opinion delivered July 2, 1979
(In Banc)

*Shackleford, Shackleford & Phillips,* P.A. and *Johnson & Tarvin,* for appellants.

*Griffin, Rainwater & Draper,* for appellee.

CONLEY BYRD, Justice. Appellee Felix Allen Clark was injured when he drove his pickup truck into the rear of a loaded log truck stalled on the Ouachita River Bridge on Highway No. 82. The collision occurred about dark and during a heavy thunderstrom. The log truck, a battered and beaten 1968 model Chevrolet with no tail lights, was owned and operated by appellant Moses Newton. Appellee brought this action against appellant Moses Newton and appellant Bill Fitzgerald, a contractor or timber dealer for Georgia Pacific Corporation. The theory of liability of appellant Bill Fitzgerald was based upon the allegation that he was negligent in contracting with appellant Moses Newton because Moses Newton was an incompetent contractor to haul logs. The jury found the issues in favor of appellee and assessed the damages at $155,000.

To understand Fitzgerald's contention that he is entitled to a directed verdict because Newton was not an independent contractor, it is necessary to understand the method employed by Georgia Pacific Corporation to obtain a supply of logs for the use of its paper mill operations. The record shows that Georgia Pacific Corporation does not purchase logs directly from the people who actually cut and deliver the logs. Instead Georgia Pacific contracts with a number of people such as appellant Fitzgerald to supply Georgia Pacific with logs. The contract covers logs that are cut from lands owned by Georgia Pacific and lands of other owners generally through deals made by the contractor or dealer such as Fitzgerald. The contractor or dealer in turn either contracts or employs producers to cut the logs from the designated areas at so much per cord. When the producer hauls the logs

to the mill, the loaded truck is weighed unloaded, and then weighed again by Georgia Pacific. Georgia Pacific issues a ticket to the producer showing the number of cords of wood delivered, the contractor for whom the producer is working, and the zone from which the wood is cut. The producer in turn presents the ticket to the dealer and receives a check from the dealer for the cords of wood delivered at the price the dealer is paying for pulpwood. The price paid for pulpwood by the different dealers is generally the same and is generally known throughout the area. The dealer makes his profit between the price he pays for each cord and the amount per cord that Georgia Pacific pays him. The price that the dealer receives from Georgia Pacific is not a general known fact. Fitzgerald had four regular producers with whom he contracted to cut the logs from the areas he had marked and designated. However, appellant Newton was not among Fitzgerald's regular producers.

The record shows that Moses Newton does not cut logs from lands marked and designated by Fitzgerald or any of the other contractor dealers. Newton makes his own arrangements with a landowner to cut logs and when he gets a load ready to go, he hauls the logs to Georgia Pacific's mill. The only reason Newton has any contact with Fitzgerald is that Georgia Pacific will not accept the logs unless they are credited to a contractor or dealer. Over the years Newton has called out the name of Fitzgerald or C. P. Johnson, another contractor dealer. Fitzgerald does not know that Newton is hauling logs until Newton presents his ticket for payment. During the calendar year 1975, Newton delivered four loads of logs (one on 9/18/75, two on 11/18/75 and one on 11/14/75). Newton hauled one load on January 12, 1976 and had hauled one load prior to noon on March 4, 1976. Appellee Clark was injured on March 4, 1976 when Newton's truck blew up on the Ouachita River Bridge while attempting to deliver the second load. Newton finally delivered the latter load to the mill on March 6, 1976. Fitzgerald paid the tickets for the delivery of each load when the tickets were presented.

Based upon the foregoing record the trial court should have directed a verdict for Fitzgerald for we agree with appellant Fitzgerald that Newton was not an independent

contractor — *i.e.* Newton was a supplier of logs as far as Fitzgerald was concerned, Restatement of Agency §14K. In other words, Newton was not hired to perform services for Fitzgerald. Rather at the time of the collision between appellee Clark and Newton's truck, the logs belonged to Newton and Fitzgerald had no obligation with respect to the logs until such time as the logs were delivered to the mill and Newton selected Fitzgerald as the contractor dealer to receive credit for the logs delivered.

For still another reason, we agree with appellant Fitzgerald that he was entitled to a directed verdict—*i.e.* there is no evidence that Moses Newton was an inocompetent contractor, even if we assume that Moses Newton was an independent contractor. The proof shows that Newton had been engaged in cutting and hauling pulpwood most of his life. Newton had hauled logs under the same arrangement for two or three years and had been paid by Fitzgerald and so far as the record shows without incident. Appellee to avoid our holding in *Western Arkansas Telephone Company v. Cotton,* 259 Ark. 216, 532 S.W. 2d 424 (1976), contends that there is no testimony or other evidence revealing that Fitzgerald's past experience with Newton had been successful or even satisfactory. In attempting to avoid the holding in *Western Arkansas Telephone Co. v. Cotton, supra,* that a contractor cannot be held liable on the theory of negligent selection of an independent contractor where the contractor had had previous successful experience with the independent contractor, appellee wishes to place the burden of proof upon appellant Fitzgerald of showing that the previous experience was successful. However, the burden of proof was upon appellee to prove that Fitzgerald either knew or should have known that Newton was incompetent in some manner and that his injuries arose out of that characteristic which rendered Newton incompetent to do the work and appellee by a mere showing of prior expereince between the contractor and the independent contractor cannot shift the burden of proof to the contractor to show that the prior experience was successful — *i.e.* the burden was upon appellee to show that such prior experience was other than successful. Furthermore, with respect to the particular characteristic of Newton, which appellee contends made Newton incompetent — *i.e.* the awareness of Newton

regarding proper emergency procedures on the highway —
there is a dispute in the evidence as to whether Newton put
out the proper warning devices. The fact that the jury found
Newton negligent with respect to this particular incident does
not raise a presumption that Fitzgerald had notice or
knowledge that Newton was incompetent with respect to his
obligations of displaying emergency warnings.

Moses Newton has also appealed contending that the
trial court erred in permitting appellee to show that a blood
test ordered by a State Policeman pursuant to Ark. Stat. Ann.
§ 75-1045(c)(2) could be introduced without complying with
The requirements of Ark. Stat. Ann. § 75-1045(c)(2) — *i.e.*
that the blood was withdrawn under the supervision of a
licensed physician and that the testing method had been ap-
proved by the State Health Department.

The record shows that after leaving work at 5:00 p.m.
appellee had consumed one beer with his brother. Just before
the collision, appellee had been to a package store to obtain
some additional beer. He admits that upon leaving the
package store, he had opened one can of the beer for the pur-
pose of drinking the same. The record does not show what
part, if any, of the last can was consumed. However, the
medical technologist, George-Roberts, who performed a test
on the blood allegedly drawn from appellee, at the request of
the State policeman, testified that it contained 0.0% of
alcohol.

To uphold the action of the trial court in admitting the
blood test, appellee contends that the provisions of Ark. Stat.
Ann. § 75-1045 (c)(2) *supra,* are solely for the benefit of the
driver and that the driver of the automobile can waive the
requirements as to the method of withdrawing the blood and
the method of testing. We disagree with appellee in his inter-
pretation of the statute. It appears to us that the re-
quirements were placed in the statute, *supra,* to assure the
public and the driver that they could rely upon the tests in
connection with highway safety in general. Newton, as a
member of the public, has a right to expect that such tests
ordered by the State Police will also be reliable. It follows

that the trial court erred in admitting the blood test into evidence.

Newton also contends that the verdict is excessive but in view of the reversals for the reasons set forth above, we need not reach that issue.

Reversed and remanded.

HARRIS, C.J. and HICKMAN, J., would affirm.