Anthony Eudean WEAVER *v.* STATE of Arkansas

CR 86-90                                            720 S.W.2d 905

Supreme Court of Arkansas
Opinion delivered December 22, 1986

*John Wesley Hall, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. The appellant, Anthony Eudean Weaver, was convicted of driving while intoxicated and sentenced to six months imprisonment, a $250 fine and suspension of his driver's license for 120 days. The court of appeals certified this case to us, as one of first impression.

Appellant questions two decisions of the trial judge on appeal. First, the trial judge refused to allow two defense witnesses to testify because they were not disclosed to the state before trial. Second, the results of a blood alcohol test were admitted over the appellant's objection. We find no error and affirm the conviction.

The state made a timely request for disclosure of the names of all the defense witnesses. A.R.Cr.P. Rule 18.3. The appellant did not disclose the names of two witnesses called in his defense, and the trial court refused to allow these two witnesses to testify. The appellant argues that the trial court incorrectly construed A.R.Cr.P. Rule 18.3., which provides:

> Subject to constitutional limitations, the prosecuting attorney shall, upon request, be informed as soon as practicable before trial of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof.

Appellant argues that since his defense was a general denial, the phrase "any defense" in the rule does not apply. The basis of his argument is that since the Criminal Code and the Rules of

Criminal Procedure were written by the same commission, divided into two committees and adopted substantially together, they must be construed as a whole. He argues that the word "defense" is defined in the code and that definition does not include a general denial. He then concludes that we should similarly interpret the phrase "any defense" as used in the Rules of Criminal Procedure. We decline to so interpret our rule.

■ The commentary to Article V of the Rules of Criminal Procedure provides:

> The rules which follow trace the contours of a comprehensive discovery scheme characterized by broad reciprocal pretrial disclosure aimed at expediting the criminal justice process.

> Broad pretrial disclosure would seem to be not only desirable but also necessary. By encouraging guilty pleas, reducing delays during trial, and in general lending more finality to the disposition of criminal cases, disclosure alleviates docket congestion and permits a more economical use of resources.

We are still of the opinion that discovery in criminal cases, within constitutional limitations, must be a two-way street. This interpretation promotes fairness by allowing both sides the opportunity for full pretrial preparation, preventing surprise at trial, and avoiding unnecessary delays during the trial. The trial court construed our rule correctly considering its purpose.

This interpretation does not mean that genuine rebuttal witnesses must be disclosed, for neither the state nor the defense would necessarily know in advance of the need for their testimony. *See Parker* v. *State*, 268 Ark. 441, 597 S.W.2d 586 (1980).

The appellant next argues that the trial court was wrong in admitting the results of a blood alcohol test because it was not shown that the test was performed pursuant to Ark. Stat. Ann. § 75-1045 (Supp. 1985). The test in this case was ordered by an emergency room physician for his own information. The trial judge admitted the test results. The appellant objected to the introduction of the test results because it was not shown that the test was conducted according to Ark. Stat. Ann. § 75-1046(b)

(Repl. 1979), which requires the test to be conducted according to methods approved by the State Department of Health.

▮ Ark. Stat. Ann. § 75-1045 governs the validity of the blood alcohol, breathalyzer or other chemical tests used to determine the alcohol in the blood or the sobriety of a person. But it does not dictate the validity of all blood tests conducted in Arkansas. The statute is limited to those tests ordered either by a police officer or a defendant in connection with a criminal charge relating to sobriety. For example § 75-1045 reads in pertinent part:

> (a) (3) Such chemical test or tests shall be administered *at the direction of a law enforcement officer* . . . The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered. . .

> (c) (1) Chemical analyses of the person's blood . . . *to be considered valid under the provisions of this section* shall have been performed according to methods approved by the Arkansas State Board of Health.

> (2) When a person shall submit to a *blood test at the request of a law enforcement officer under the provisions of this section.* . . . Provided that no persons, . . . who withdraws blood for the purpose of determining alcohol or controlled substance content thereof *at the request of a law enforcement officer under the provisions of this section.* . . .

> (3) The person tested may have a physician, or a qualified technician, registered nurse, or other qualified person of his own choice administer a complete chemical test or tests in addition to any test administered *at the direction of a law enforcement officer.* . .

> (4) Upon the request of the person who shall submit to a chemical test or tests *at the request of a law enforcement officer.* . . . (Italics supplied.)

Such tests, ordered by a police officer or a defendant, must be carefully monitored to assure reliability. *Newton & Fitzgerald* v. *Clark*, 266 Ark. 237, 582 S.W.2d 955 (1979). Otherwise, their

results could be manipulated to favor one side or the other in a criminal case. Therefore, a uniform set of standards must exist for all such chemical tests, which can be performed in the private office of a physician, qualified technician, registered nurse, or other qualified personnel.

This test was not ordered by a defendant or an officer of the law. It was not ordered to be used as evidence in a criminal case pursuant to Ark. Stat. Ann. § 75-1045. It was ordered by an emergency room physician for his own use in connection with his treatment of a patient. Therefore, the question was not whether the test complied with the strict procedures of Ark. Stat. Ann. § 75-1046 but whether the test results were admissible under the Arkansas Rules of Evidence, Rule 803(4). According to the doctor's testimony, to his knowledge, the test was performed in accordance with the usual procedures for blood tests at the Baptist Medical Center, Little Rock, Arkansas, and those procedures comply with all the requirements of the State Health Department.

The trial judge found the test reliable and admitted the results. He has the discretion to make that decision. *Edgemon* v. *State*, 275 Ark. 313, 630 S.W.2d 26 (1982). Ark. Stat. Ann. § 75-1046 does not control the validity of this test. The test results were valid evidence which existed and the state should not be denied the use of the test.

The legislature did not deem it necessary to determine the validity of every blood test taken by hospitals, only those ordered by the state or the defendant to be used as evidence in a criminal case. It was not intended to be all-inclusive. *See Watson* v. *Frierson*, 272 Ark. 316, 613 S.W.2d 824 (1981). We will not read into the statute such provisions that are not expressly stated.

Affirmed.

PURTLE, DUDLEY, and NEWBERN, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. I dissent from that part of the majority opinion which holds that the result of a blood test may be admitted into evidence in a DWI case even though the State did not prove that the test was performed according to the methods approved by the State Department of Health.

A part of the applicable statute, Ark. Stat. Ann. § 75-1045, is expressly in point:

(b) *Chemical analyses of the person's blood*, urine, or breath *to be considered valid* under the provisions of this act [§§ 75-1045, 75-1046,] and Act 346 of the 1957 [§ 75-1031.1] as amended, *shall have been performed according to methods approved by the State Department of Health* or by an individual possessing a valid permit issued by the State Department of Health for this purpose. The State Department of Health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the State Department of Health.

(c) The State Department of Health is authorized to promulgate rules and regulations reasonably necessary to carry out the purposes of this act.

In response to the statute, the State Department of Health adopted the following regulation:

PART B. BLOOD SAMPLING

3.20 *Sample Collection.* Blood samples may be collected from living individuals only by persons authorized by law and by means of a sterile, dry syringe and hypodermic needle or other sterile equipment. The skin at the area of puncture shall be thoroughly cleansed and disinfected with an aqueous solution of nonvolatile antiseptic such as benzalkonium chloride (zephiran). Alcohol or other volatile organic disinfectant solutions shall not be used as a skin antiseptic or to clean hypodermic needles, syringes, or containers.

The State did not prove that the test was given in compliance with the regulation. The witness who testified about the blood alcohol test result, the emergency room physician, testified that he only learned of the test results from hospital records; he did not personally take the blood test and did not know who did; he did not know what type of equipment was used, and did not know whether

an aqueous (non-alcoholic) skin preparation was used; he did not know whether Department of Health regulations were complied with; he did not know what type of test was used or whether it was approved by the Department; he did not know who analyzed the blood sample, or who entered the result into the hospital records; and he did not know whether the hospital was licensed, or exempted from licensing, for testing for blood alcohol content. The hospital technicians working at the hospital on the night of the test did not know who took the blood sample or who analyzed it; they only knew that one of them entered the result into the computer terminal. The State did not put on any evidence by the technicians about the equipment, the manner of administering the test, or licensing. In short, the State simply did not prove compliance with the regulation.

Under the express language of the statute, failure to prove compliance with the regulations prevents the test results from being considered valid, and, accordingly, should prevent the result from being admitted into evidence. However, the majority creates an exception when the test is ordered by an emergency room physician for use in treatment of his patient. In order to justify such an exception the majority opinion states that the applicable statute, Ark. Stat. Ann. § 75-1045 "does not dictate the validity of all blood tests. . . ." The majority opinion clearly ignores the express language of Ark. Stat. Ann. § 75-1045(b)(1) which provides:

> Chemical analysis of the persons blood . . . *to be considered valid under the provisions of this act . . . shall have been performed according to methods approved by the State Department of Health.*

In addition, one of the primary purposes of the statute is to assure the public that all tests admitted into evidence can be relied upon. *Newton* v. *Clark*, 266 Ark. 237, 582 S.W.2d 955 (1979). One result of the majority opinion will be to undermine the assurance of a reliable test.

I respectfully dissent.

PURTLE and NEWBERN, JJ., join in this dissent.