Joe W. MOSLEY *v.* STATE of Arkansas

CA CR 86-230                              732 S.W.2d 861

Court of Appeals of Arkansas
Division II
Opinion delivered July 8, 1987

*Brockman & Norton*, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a conviction for driving while intoxicated. Appellant was sentenced to pay a fine of $150.00 plus court costs, to attend an alcohol treatment program, and his driver's license was suspended for 90 days.

The evidence showed that shortly after midnight on January 24, 1986, appellant was driving down Middle Warren Road in Jefferson County, Arkansas, when he lost control of his truck, left the road on the right side and struck a mailbox, crossed the road and struck a driveway culvert on the left side of the road and landed in a ditch. According to a statement given police officers, appellant got out of the truck, inspected the damage, and went to a nearby house to call his wife who came and took him to the hospital.

Officer Laron Braswell of the Jefferson County Sheriff's Department received a call reporting the accident at 2:17 a.m. on January 24, 1986. He investigated the scene of the accident, then went to the hospital to interview appellant who had suffered head and facial injuries in the accident and also had a broken jaw. When Officer Braswell arrived at the hospital, appellant was drifting in and out of consciousness and Braswell was unable to communicate with him. Because he detected an odor of alcohol about appellant, Braswell issued a citation for DWI.

On January 27 at 10:15 p.m., Officer Braswell, accompanied by Sergeant Boe Fontaine, interviewed appellant at his home. He was given his Miranda rights and signed the rights form. Appellant then told the officers that he had been to a cookout on the evening of the accident and had consumed a six pack or more of beer. He said he started home around midnight and was driving

about 50-55 miles per hour when a deer suddenly ran in front of him. When he swerved to miss the deer, he lost control of his truck and wound up in the ditch. Sergeant Fontaine testified that appellant was very cooperative and hospitable during the interview. The two officers were the only witnesses at trial.

At the trial, the prosecutor offered in evidence, under the Hospital Records Act, a copy of the results of a blood alcohol test performed on appellant while he was at the hospital emergency room. Defense counsel first objected on the basis that the Hospital Records Act, Ark. Stat. Ann. § 28-936 — § 28-943 (Supp. 1985), did not apply in criminal cases; second, that section 1045(a) of the Omnibus DWI Act, Ark. Stat. Ann. § 75-1031.1, § 75-1045(a), § 75-2501—§ 75-2514 (Supp. 1985), lists three criteria under which a driver is deemed to have consented to a blood alcohol test, none of which applied in this case; and third, that there was no evidence that the test was conducted according to methods approved by the Arkansas State Board of Health, as required by section 75-1045(c)(1) of the Omnibus DWI Act. The copy of the test result was admitted and appellant was convicted. The judge stated:

> The Court finds that the defendant was in fact under the influence of alcohol at the time he was driving the vehicle and that the accident happened, as a matter of fact was intoxicated at the time this examination was made—the hospital records indicating .16 per cent with the normal being 0.

On appeal it is argued that failure to comply with the Omnibus DWI Act pertaining to chemical testing of DWI suspects precludes the introduction or use of other chemical test results at trial; that the Hospital Records Act was misapplied; and that there was insufficient evidence to sustain the conviction.

In *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984), the Arkansas Supreme Court held that when there is a challenge to the sufficiency of the evidence, we must review that point prior to considering any alleged trial errors and, in doing so, we must consider all the evidence, including any which may have been inadmissible, in the light most favorable to the appellee. Under *Harris*, if that evidence is insufficient to convict, the case must be reversed and could not be tried again. After reviewing all

the evidence introduced, even if inadmissible, we hold that there is sufficient evidence in the record to convict appellant of driving while intoxicated. This is based upon evidence that he smelled of alcohol shortly after being involved in a one-vehicle accident; that a blood alcohol test taken at the hospital showed a result of 0.16%; and that appellant admitted to police officers that he had been drinking beer before the accident occurred.

We now consider the appellant's contention that the Hospital Records Act was improperly used in this case. Section 28-937 of that Act provides in pertinent part:

> Except as hereinafter provided, when a subpoena duces tecum is served upon a custodian of records of any hospital . . . and such a subpoena requires the production of all or any part of the records of the hospital related to the care or treatment of a patient in the hospital, it shall be sufficient compliance therewith if the custodian delivers, by hand or by registered mail to the court clerk or the officer, court reporter, body or tribunal issuing the subpoena or conducting the hearing, a true and correct copy of all records described in such a subpoena together with the affidavit described in Section 5 [§ 28-940] hereof; . . . .

Section 28-938 of the Act requires that the records be sealed in an inner envelope which is then enclosed in an outer envelope, and section 28-939 contains the following provision:

> Before directing that such inner envelope or wrapper be opened, the judge, court, officer, body or tribunal shall first ascertain that either (1) the records have been subpoenaed at the instance [insistence] of the *patient involved* or his counsel of record, or (2) the *patient involved* or someone authorized in his behalf to do so for him *has consented thereto and waived any privilege of confidentiality involved. . . .*( Emphasis added.)

■ The record in this case clearly shows that the blood alcohol report was introduced into evidence without compliance with the above provisions of the Hospital Records Act. There was no indication whatsoever that the report was sealed in an inner envelope which was also sealed in an outer envelope. To the contrary, it appears from the record that the prosecutor simply

had a copy of the report which he handed to the court.

█ In addition, it seems clear that the confidential medical records of a patient cannot be used against him in a criminal proceeding without the waiving of his privilege of confidentiality and certainly not over his objections. We realize the Omnibus DWI Act provides that under certain conditions a driver is deemed to have consented to chemical tests of his blood, urine or breath for the purpose of determining the blood alcohol content; however, we do not think any of those conditions are present here. The first condition provided is where a driver is arrested for any offense arising out of acts alleged to have been committed when driving while intoxicated or when there was 0.10% or more of alcohol in the person's blood. *See* Ark. Stat. Ann. § 75-1045(a)(1) (Supp. 1985). Here, the appellant was given a citation to appear in court. This is not an arrest. *See* Criminal Procedure Rules 5.2 and 5.3. Moreover, the citation was for driving while intoxicated, not for an act committed when driving while intoxicated. The second condition is that the driver is involved in a fatal accident. *See* Ark. Stat. Ann. § 75-1045(a)(2) (Supp. 1985). Here, appellant's accident involved no fatality. The third condition is that the driver is stopped by a law enforcement officer who has reasonable cause to believe that the driver is intoxicated. *See* Ark. Stat. Ann. § 75-1045(a)(3)(Supp. 1985). Here, appellant was not stopped; he was simply handed a citation after being admitted to the hospital.

█ Appellee argues, however, that there was no objection to the introduction of the blood test on the specific basis that there had been a failure to comply with the provisions of the Hospital Records Act which we have discussed. It is pointed out that defense counsel simply stated:

> Your Honor, first of all, I don't think the Hospital Records Act has any application to a criminal proceeding. I think it has only application to civil proceedings. That would be my first objection.

While only the specific objections made at trial are considered on appeal, and all others are deemed waived, *see Mincy v. State*, 19 Ark. App. 80, 717 S.W.2d 213 (1986) and *Biniores v. State*, 16 Ark. App. 275, 701 S.W.2d 385 (1985), the appellant also objected to the introduction of the blood test on the specific basis

that there was no evidence that it was conducted or administered in accordance with statutory requirements. We agree that there is a total absence of any evidence indicating the test was performed in compliance with the Omnibus DWI Act's provision requiring that the chemical analysis be performed according to methods approved by the Arkansas State Board of Health. Ark. Stat. Ann. § 75-1045(c)(1)(Supp. 1985).

It has been held that substantial compliance with these provisions is sufficient. *Sparrow* v. *State*, 284 Ark. 396, 683 S.W.2d 218 (1985); *Munn* v. *State*, 257 Ark. 1057, 521 S.W.2d 535 (1975). But such tests must be monitored carefully to assure reliability. *Newton & Fitzgerald* v. *Clark*, 266 Ark. 237, 582 S.W.2d 955 (1979). In the present case, only the bare piece of paper containing the copy of the test result was introduced. There is no showing whatsoever that the test was performed according to a method approved by the health department. However, the appellee cites *Weaver* v. *State*, 290 Ark. 556, 720 S.W.2d 905 (1986), as authority for the admissibility of the test report. In that case, the appellant, who was charged with DWI, argued that the result of a blood test was not admissible because it was not shown that the test was conducted according to Ark. Stat. Ann. § 75-1046(b)(Repl. 1979). That statute is apparently still in effect and makes the same requirement for blood test admissibility as is made in Ark. Stat. Ann. § 75-1045(c)(1)(Supp. 1985). Under both sections the chemical analysis of a person's blood, urine or breath must be performed according to methods approved by the State Department of Health in order to be considered valid under the provisions governing admissibility as evidence.

In *Weaver*, the court held that the blood test had not been ordered by the defendant or a police officer and had not been ordered for use as evidence in a criminal case; therefore, the court said, the question was not whether the test complied with the strict procedures of Ark. Stat. Ann. § 75-1046 but whether the test result was admissible under A.R.E. Rule 803(4). That rule is an exception to the hearsay rule and provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history or past or present symptoms, pain or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule. The court held

there was no error in admitting the result of the test in *Weaver* because a doctor testified that the test was performed in accordance with the usual procedures for blood tests at the Baptist Medical Center and that those procedures complied with the requirements of the State Health Department.

We do not believe *Weaver* is controlling here. No one testified in this case about the method employed in obtaining appellant's blood sample or in analyzing it. As pointed out in the dissent in *Weaver*, the State Department of Health has adopted the following regulation:

> *Sample Collection.* Blood samples may be collected from living individuals only by persons authorized by law and by means of a sterile, dry syringe and hypodermic needle or other sterile equipment. The skin at the area of puncture shall be thoroughly cleansed and disinfected with an aqueous solution of nonvolatile antiseptic such as benzalkonium chloride (zephiran). Alcohol or other volatile organic disinfectant solutions shall not be used as a skin antiseptic or to clean hypodermic needles, syringes, or containers.

290 Ark. at 561.

One of the obvious purposes of this regulation is to prevent the blood sample from being contaminated with the alcohol which otherwise might be used to sterilize the skin before a blood sample is drawn. In the instant case, there is no evidence whatsoever of who ordered the blood alcohol test, who drew the blood, what type of supplies were used or whether they were sterile. There is no evidence of whether a nonalcohol skin sterilant was used or whether the test was contaminated by an alcohol swab used to sterilize the skin. And there is no evidence of what method was used to test the blood alcohol and whether that method was approved by the State Department of Health. In this case, we do not have a doctor's opinion of the validity of the test as was present in *Weaver*. Here we have no evidence at all regarding the procedure used—only the bare-bones result of the test. We think this is insufficient to allow its introduction into evidence.

Furthermore, we point out that Ark. Stat. Ann. § 75-1046(a) (Repl. 1979) provides: "Percent by weight of alcohol in

the blood shall be based upon milligrams of alcohol per one hundred cubic centimeters of blood." The blood alcohol report contained in the record in this case states only "Blood Alcohol 0.16% (Normal 0)."

For the reasons stated above, this case is reversed and remanded for new trial.

COULSON and JENNINGS, JJ., agree.