Bruce McVAY *v.* STATE of Arkansas

CR 92-1030                                          847 S.W.2d 28

Supreme Court of Arkansas
Opinion delivered February 15, 1993

W. *Hunter Williams, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Bruce McVay appeals from a judgment entered on his conviction of the felonious negligent homicide of William Mann. Death resulted from a collision between vehicles driven by Mann and McVay. On appeal McVay challenges three evidentiary rulings by the trial court and the denial of his motion to set aside the conviction and enter an order of dismissal based on the doctrine of collateral estoppel. Finding no error, we affirm the judgment appealed from.

McVay was charged with two offenses: felonious negligent homicide in violation of Ark. Code Ann. § 5-10-105 (1987) and driving while intoxicated in violation of Ark. Code Ann. § 5-65-103 (1987). A trial was held and the jury was instructed on both charges. Concerning the offense of felonious negligent homicide, the jury was instructed that the state must prove beyond a reasonable doubt that McVay negligently caused the death of William Mann "as a result of operating a vehicle while intoxicated, or if at the time there was one-tenth of one percent (0.10%), or more, by weight of alcohol in Bruce McVay's blood as determined by a chemical test of Bruce McVay's blood. . . ." That identical element was included in the instruction pertaining to driving while intoxicated.

The jury returned a verdict finding McVay guilty of negli-

gent homicide, but not guilty of DWI. A fine of $1,000 and a three year suspended sentence was imposed. McVay moved to set aside the conviction on the basis of inconsistent verdicts which he alleged were in violation of the double jeopardy clause. The motion was denied and McVay has appealed.

McVay first argues that the trial court erred in failing to grant his motion to set aside the judgment of conviction. He maintains that under § 5-65-103 DWI is an element of negligent homicide as defined in § 5-10-105, and because the jury acquitted him of DWI, the doctrine of collateral estoppel precludes his conviction for negligent homicide. McVay argues that if he were first tried for DWI and acquitted, and then tried for negligent homicide, the state would be barred from bringing that charge under the doctrine of collateral estoppel. McVay argues the same principle should apply when he is subject to both charges in one trial.

McVay is correct to this extent: if the state proceeded against him first on DWI and he were acquitted, the state would be collaterally estopped from proceeding against him in a second trial for negligent homicide. *See United States* v. *Greene*, 497 F.2d 1068 (7th Cir. 1974); *Ashe* v. *Swenson*, 397 U.S. 436 (1970). We disagree, however, with the corollary — that the same result applies when the two offenses are tried simultaneously.

This question was presented in *Dunn* v. *United States*, 284 U.S. 390 (1932), the last opinion of Justice Holmes. *Dunn* held that the principle of collateral estoppel would not apply when, in the same trial, a defendant was acquitted on one count but found guilty on another. The rationale in that case has been questioned in part, but there were two theories for the Court's holding and subsequent decisions have upheld it on the alternative basis. For example, in *United States* v. *Greene, supra*, the court gave the following explanation for agreeing with Dunn:

> The [faulty] argument in *Dunn* was in no way essential to [Holmes's] conclusion. Rather, the holding of *Dunn* can be supported independently from Holmes's dicta. *The true rationale for the rule permitting inconsistent verdicts in a single trial is that a jury may convict on some counts but not on others not because they are*

*unconvinced of guilt, but because of compassion or compromise. Indeed if the rule were otherwise, the government would be entitled to have the jury warned that an acquittal on some counts might undermine a guilty verdict on others — almost the opposite of the standard instruction, which is obviously beneficial to criminal defendants.* (Citations omitted.) [Emphasis added.]

In *United States* v. *Powell,* 469 U.S. 57 (1984), the issue was again addressed. *Powell* recognized the dubious rationale in *Dunn,* but reaffirmed its holding on the reasoning expressed in *United States* v. *Greene, supra.* Betty Lou Powell had been convicted of soliciting a conspiracy by telephone to possess and to distribute cocaine. She was acquitted of the lesser included offense of conspiracy to possess and to distribute cocaine. She claimed the verdicts were inconsistent and she should be granted a retrial as to the telephone solicitation counts because she had been acquitted of one of the elements of that offense. The Supreme Court disagreed and held that inconsistent verdicts in the same trial where there is conviction on the compound offense but acquittal on the predicate (lesser included) offense is permissible, and that collateral estoppel does not apply. The *Powell* decision has been followed in a number of subsequent decisions, *see* e.g., *United States* v. *Romano,* 879 F.2d 1056 (2d Cir. 1989), where the court stated:

> The law is clear that a defendant may not attack his conviction on one count because it is inconsistent with an acquittal on another count. Res judicata concepts are not applicable to inconsistent verdicts; the jury is free to exercise its historic power of lenity if it believes that a conviction on one count would provide sufficient punishment. (Citations omitted.)

This case falls directly within the rule of law announced in *Dunn* and reaffirmed in *Powell.* While McVay was acquitted of the predicate offense, he was convicted of the compound offense in the same trial. Collateral estoppel does not apply and McVay's conviction will not be vacated. Several decisions of this court and of the Court of Appeals are in accord with the rationale of the *Powell* case: *Johnson* v. *State,* 274 Ark. 293, 623 S.W.2d 831 (1981); *Riddick* v. *State,* 271 Ark. 203, 607 S.W.2d 671 (1980);

*Wade* v. *State*, 290 Ark. 16, 716 S.W.2d 194 (1986); *Cole* v. *State*, 33 Ark. App. 98, 802 S.W.2d 472 (1991).

As his second point, McVay argues the trial court erred in allowing testimony concerning admissions he made in the emergency room following the accident. One of the admitting nurses smelled alcohol, and in determining what medication could be prescribed, asked McVay if he had had anything to drink. He told her he had, and when asked how much, he stated he had drunk about a half a case of beer in the last hour-and-a-half.

By a motion in limine, McVay asked that the nurse's testimony not be admitted. His argument below and again on appeal is that the statement was untrustworthy and uncorroborated and that Ark. Code Ann. § 16-89-111(d) (1987) requires that a confession be corroborated by other evidence in order to sustain a conviction. The argument, however, confuses admissibility with sufficiency of the evidence. Section 16-89-111(d) and the cases interpreting it deal only with the *sufficiency* of the evidence to sustain a *conviction*, and not mere admissibility. The standard for reviewing that ruling is abuse of discretion. Ark. R. Evid. 103. McVay has not shown that discretion to have been abused.

McVay also maintains his statements to the nurse were a privileged communication between physician and patient under Ark. R. Evid. 503. We cannot sustain the argument. Ark. R. Evid. 503(3) provides for a waiver of the privilege if the patient relies upon a physical, mental or emotional condition as an element of his claim or defense. At the motion in limine, McVay's attorney stated the defense would be that McVay smelled of alcohol because beer cans in the car had ruptured and spilled over him at the time of the collision. Under these circumstances he has waived the privilege. *See also Edwards* v. *State*, 244 Ark. 1145, 429 S.W.2d 92 (1968).

Appellant next argues that the trial court erred in admitting the medical blood alcohol test into evidence. We find no merit in the contention. When McVay was taken to the emergency room after the accident, the hospital drew a blood sample and tested it, and the trial court allowed evidence of the blood test over McVay's objection. McVay makes two arguments: 1) the blood test was admitted in violation of the Hospital Records Act,

specifically Ark. Code Ann. § 16-46-304 (1987); and 2) the blood test administered was not in compliance with Ark. Code Ann. § 5-65-204 (1987).

The provision of the Hospital Records Act that McVay argues should prevent admission of his blood test is § 16-46-304, which provides that before hospital records may be used in a judicial proceeding,

> 1) The records have been subpoenaed at the instance of the patient involved or his counsel of record, or

> 2) The patient involved or someone authorized in his behalf to do so for him has consented thereto and waived any privilege of confidentiality involved.

McVay argued below that he would not consent to nor waive his confidential privilege under this statute and therefore the hospital records of his blood test could not be admitted. The trial court refused to admit appellant's hospital records, but did allow the blood test results admitted.

The state argues the results of blood tests are *not* considered to be confidential information and therefore it was proper to admit them. We agree.

The Hospital Records Act was enacted in 1981, five years after our current rules of evidence were adopted in 1976. We noted in *Oxford* v. *Hamilton*, 297 Ark. 512, 720 S.W.2d 905 (1989), there was a significant change in Ark. R. Evid. 503, supra, in that previously, "any information" between doctor and patient was privileged, but in the 1976 rules the privilege has been limited to "confidential" communication. We further found in that case that a blood test result was not to be considered a confidential communication.

Under general rules of construction we assume the legislature was aware of existing law when adopting subsequent enactments, and therefore, it intentionally designed § 16-46-304 to be in accord with our other "physician privilege" statute, Ark. R. Evid. 503, by limiting the privilege to *confidential* communications. Further, for the reasons adopted in *Oxford*, we find that under § 16-46-304 a blood test will similarly be found not to be confidential information.

McVay also argues the blood test administered did not comply with the requirements set out in § 5-64-204, a provision of our DWI Omnibus Act, and therefore the test was not admissible. While we have required compliance with the Omnibus Act, we have also held that those requirements are not necessary when the blood test is not ordered by the police or the defendant for use as evidence at trial, but has been ordered by hospital personnel for their own use in connection with the treatment of the patient. *Weaver* v. *State*, 290 Ark. 556, 720 S.W.2d 905 (1986). Here McVay does not contend that either he or the police ordered the blood test for use at a criminal trial and the record reveals that the blood test was in fact ordered by hospital personnel for their own use.

At his last point, McVay argues that the trial court erred in admitting the testimony of Dr. Stockstill, a pathologist at the admitting hospital. McVay objected to his testimony on the basis of a particular calculation Stockstill used to determine what McVay's blood alcohol level was at the time of the accident. McVay argues that this calculation is prejudicial, improper and unfair under Ark. R. Evid. 403 and permits the jury to speculate. McVay did not object to the calculation as being faulty nor to Stockstill's qualifications to testify. The admission of such information is within the discretion of the trial court under Ark. R. Evid. 103, 403 and 703, and McVay has not demonstrated any abuse of that discretion.

Affirmed.