Randy L. CAFFEY *v.* STATE of Arkansas

CA CR 92-1380                    862 S.W.2d 293

Court of Appeals of Arkansas
Division I
Opinion delivered October 13, 1993

*The Law Offices of Greenhaw & Greenhaw*, by: *John F. Greenhaw*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant was convicted in a jury trial of being in actual control of a motor vehicle while intoxicated. He was sentenced to serve one year in the Washington County jail, fined $1,000.00, ordered to pay $392.00 in court costs, ordered to comply with the Ozark Guidance Center recommendations and his driver's license was suspended for a period of ninety days. On appeal, the appellant argues that the trial court erred in allowing the results of the blood alcohol test to be introduced into evidence without a showing that the procedures performed were in compliance with the Arkansas State Department of Health regulations, as required under Ark. Code Ann. § 5-65-204 (Supp. 1991). We agree, and therefore reverse and remand.

Anthony Smith, a patrolman with the Fayetteville Police Department, testified that he was dispatched around 3:00 a.m. on May 8, 1991, to the Ramada Inn to investigate a complaint that a

couple was having sex in a vehicle in the parking lot. He discovered the appellant and his companion sitting inside a car in the parking lot. He testified that the appellant was sitting on the driver's side with the engine running. Officer Smith asked the appellant for his driver's license and asked him to step outside the vehicle. He stated that he could smell alcohol on the appellant. He administered two field sobriety tests to the appellant which he said the appellant failed. He stated that at this point the appellant became very agitated and started screaming that he had just recently undergone open heart surgery. The officer then placed the appellant under arrest. Subsequent to his arrest, the appellant complained of chest pains and was breathing heavily. Officer Smith transported him to the Washington Regional Medical Center emergency room where he was examined by Dr. Beam. He stated that once inside, he advised the appellant of his rights under the implied consent law. The appellant was unable to sign the consent form but gave his verbal consent to have his blood drawn for a blood alcohol test. After the appellant was treated, Officer Smith transported him to the police department. He testified that he forwarded the blood sample to the Arkansas Health Department for testing. Officer Smith received a completed blood alcohol report form from the Arkansas Department of Health which indicated a blood alcohol content of 0.11%.

The State argues that the appellant's argument is not preserved for appeal due to the lack of a specific objection in the trial court below. We disagree. The record reveals that the appellant objected when the State sought to introduce the blood alcohol report form into evidence. One of the grounds he argued was the lack of evidence that the drawing of the blood was in accordance with the health department rules and regulations which were promulgated to prevent contamination of the blood. The State noted that they had not been given ten days notice required by statute and that the test was self-authenticating. The appellant responded that he was not questioning the chemist but was questioning the drawing of the blood and whether or not it was done in accordance with the regulations. The trial court stated that he understood the appellant's objection and overruled it.

Under Ark. Code Ann. § 5-65-204(c) (Supp. 1991), a provision of our Omnibus DWI Act, chemical analysis of a

person's blood, urine, or breath shall be performed according to methods approved by the Arkansas State Board of Health in order to be considered valid under the provisions governing its admissibility as evidence. *Mosley* v. *State*, 22 Ark. App. 29, 732 S.W.2d 861 (1987). Substantial compliance with these regulations is sufficient, *Goode v. State*, 303 Ark. 609, 798 S.W.2d 430 (1990), but such tests must be monitored carefully to assure reliability. *Weaver* v. *State*, 290 Ark. 556, 720 S.W.2d 905 (1986).

At trial, there was no evidence presented by the State indicating that the procedure used to draw blood was performed according to a method approved by the State Department of Health. Dr. Beam, the physician who treated the appellant, testified at trial but did not testify regarding the procedures used when the blood was drawn. Furthermore, apparently the phlebotomist who actually drew the blood was subpoenaed but was not called to testify by the State. The State Department of Health has adopted regulations regarding how blood samples are to be collected, including how the skin is to be cleansed and disinfected and the instruments to be used. *See* Ark. Dep't of Health, Arkansas Regulations for Blood Alcohol Testing, § 3.20. In the case at bar, there was no evidence of the type of instruments used to draw the blood or whether they were sterile. There was no evidence of whether a non-alcohol skin sterilant was used or whether the test was contaminated by an alcohol swab used to sterilize the skin. Therefore, we find the evidence insufficient to demonstrate substantial compliance with the regulations and that this prevents the introduction of the test results into evidence. *Mosley*, *supra*.

We think the case at bar is analogous to those cases in which a showing that the chemical analysis was made by a method approved by the Director of the State Board of Health and/or the Director of the Arkansas State Police, as required by previous statute, was part of the foundation to be laid for the introduction of the results of such tests or analysis and the burden was upon the State to establish it. *Smith* v. *State*, 243 Ark. 12, 418 S.W.2d 627 (1967); *Jones* v. *City of Forrest City*, 239 Ark. 211, 388 S.W.2d 386 (1965).

The State contends that, according to Arkansas

Code Annotated § 5-65-206(d) (Supp. 1991), the blood alcohol report form is self-authenticating and is admitted into evidence without the necessity of those involved in the administration of the chemical test being present to testify at trial unless the State is given advance notice that the defendant desires them to be there. Section 5-65-206 provides, in pertinent part:

> (d) The records and reports of certifications, rules, evidence analysis, or other documents pertaining to work performed by the blood alcohol program of the Arkansas Department of Health under the authority of this chapter shall be received as competent evidence as to the matters contained therein in the courts of this state subject to the applicable rules of criminal procedure when duly attested to by the program director or his assistant, in the form of an original signature or by certification of a copy. These documents shall be self-authenticating.
>
> . . .
>
> (2) Nothing in this section shall be deemed to abrogate a defendant's right of cross-examination of the person calibrating the machine, the operator of the machine, or any person performing work in the blood alcohol program of the Arkansas Department of Health, who shall be made available by the State if notice of intention to cross-examine is given ten (10) days prior to the date of the hearing or trial.

The State cites *Smith* v. *State*, 301 Ark. 569, 785 S.W.2d 465 (1990) and *Johnson* v. *State*, 17 Ark. App. 82, 703 S.W.2d 475 (1986) to support this contention. In *Johnson*, we found that Ark. Stat. Ann. § 75-103.1 (Supp. 1985) [now codified at Ark. Code Ann. § 5-65-206] required that (1) the method of testing be approved by the Board of Health, (2) the machine must have been certified in the three months preceding arrest and (3) the operator must have been trained and certified. We found that the State complied with the statutory requirements for admission of the breathalyzer test results. The State introduced a certificate which approved the method and the machine used, along with an operator's certificate issued to the officer who administered the test. We held that the statute did not require the State to introduce the installation certificate or the testimony of the senior

operator who calibrated the machine as a prerequisite to introduction of the chemical analysis test results. The Arkansas Supreme Court in *Smith* also found that the statutory law did not require the machine operator's testimony, or his certificate, as a prerequisite to the introduction of chemical analysis test results. In the present case, however, there is a statutory provision that requires a blood sample to be collected in keeping with certain Board of Health methods in order for the test to be admissible in evidence. There is simply no evidence that the Board of Health regulations were followed in this case, and under the circumstances, we find that the appellant suffered prejudice from the admission of the test result. Therefore, we reverse and remand for a new trial.

Reversed and remanded.

MAYFIELD, J., agrees.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring. I concur with the majority opinion of this division that the trial court should have required the state to introduce evidence that the blood sample was drawn in substantial compliance with regulations of the State Department of Health, but for a somewhat different reason.

Arkansas Code Annotated § 5-65-206(d) (Supp. 1991) provides, in pertinent part:

> "[R]eports of . . . evidence analysis . . . pertaining to work performed by the blood alcohol program of the Arkansas Department of Health . . . shall be received as competent evidence *as to the matters contained therein . . .*"

(Emphasis added.) Although the blood alcohol report which was received into evidence set forth the procedure which was followed in preserving and transporting the blood sample, it did not address the manner in which the blood sample was drawn. If it had set forth the procedure and it appeared to be in compliance with the applicable regulation I would have found no error in admitting the report.