Odis ROSS, Administrator of the Estate of Robert Ross, Jr.
*v.* Dorothy MOORE

CA 89-270                                         785 S.W.2d 243

Court of Appeals of Arkansas
En Banc
Opinion delivered March 7, 1990

*Felver A. Rowell, Jr.*, for appellant.

*Dale Lipsmeyer*, for appellee.

JAMES R. COOPER, Judge. This is the second appeal in this paternity case. In the first appeal, *Ross* v. *Moore*, 25 Ark. App. 325, 758 S.W.2d 423 (1988), we reversed the trial court's finding that the decedent, Robert Ross, was the putative father of the appellee's two children because the appellee had not proven her case by clear and convincing evidence. Although a blood test had been performed in connection with those proceedings, the results were not made part of the record.

In the second trial, the blood test report from National

Paternity Laboratories, Inc., was introduced into evidence over the objection of the appellant. At the conclusion of the hearing, the circuit court again found that the decedent was the putative father. From that decision, comes this appeal.

The appellant argues that the evidence was insufficient to establish paternity, that the trial court erred in allowing the blood test report to be admitted into evidence, and that the trial court erred in allowing the decedent's former attorney to testify. We agree that the trial court erred in permitting the blood test report to be introduced, and we reverse and remand.

At the second hearing, a report from National Paternity Laboratories, Inc., was admitted into evidence. This report was addressed to Joe Cambiano, the decedent's former attorney. It stated:

> On August 25, 1983 blood specimens were received from the Child Support Enforcement Unit on Robert Ross (alleged father), Dorothy M. Moore (presumed mother), Tracy J. Moore (child #1) and Dexter Moore (child #2) for the purpose of paternity exclusion studies. Completed identification forms of all parties are in our files.

The report stated further that the plausability of paternity for Tracy was % 98.39 and for Dexter % 96.7. The report concluded that it was very likely that both children were fathered by the decedent. The report was signed by Laboratory Director Randall A. Smith, Ph.D., and his signature was notarized.

The appellant objected to the introduction of this report because it did not reflect that it was performed by a duly licensed physician appointed by the court in accordance with Ark. Code Ann. § 9-10-108 (1987). The appellant also objected because

> [H]e does not show that the blood in these samples were drawn by the physicians or person qualified to do so to administer the test. Without that foundation, your honor, and without that testimony the report itself is not subject to being introduced.

Later in the hearing, the appellant again objected on the grounds that the report did not show that the people who conducted the test were qualified, and that a proper foundation had not been

laid. The appellant then referred to subsection § 9-10-108(b), which was in effect at the time of the hearing, and which provided that:

(b) The tests shall be made by a duly qualified physician or physicians, or by another duly qualified person or persons, not to exceed three (3), to be appointed by the court.

Subsection (c) further provided that:

(c)(1) The results of the tests shall be receivable in evidence.

(2) A written report of the test results by the duly qualified expert performing the test, certified by an affidavit duly subscribed and sworn to by him before a notary public, may be introduced in evidence in illegitimacy actions without calling the expert as a witness. If either party shall desire to question the expert in those cases where he has performed the blood tests, the party shall have him subpoenaed within a reasonable time prior to trial.

(3) The experts shall be subject to cross-examination by both parties after the court has caused them to disclose their findings.

(*Cf.* Ark. Code Ann. § 9-10-108 (Supp. 1989)) (changing prior law). The appellant contends that it was error for the trial court to admit the report into evidence because no foundation was laid pursuant to subsection (b). Although the circuit court has broad discretion in determining whether such reports should be admitted into evidence, *Chandler v. Baker*, 16 Ark. App. 253, 700 S.W.2d 378 (1985), we hold that the trial court abused its discretion in this case.

Prior to the adoption of Ark. Code Ann. § 9-10-108, this report would have been considered inadmissible hearsay, and in order to be admissible and fall into one of the exceptions to the hearsay rule, certain foundational requirements must have been met. *Shipley v. State*, 25 Ark. App. 262, 757 S.W.2d 178 (1988). For example, in order for this evidence to fall into the medical diagnosis exception, the proponent would have to show that the statements were made for the purpose of medical diagnoses or treatment. Ark. R. Evid. 803(4). Other medical records may be

admitted where there is a showing of trustworthiness or authenticity, see *Lee* v. *State*, 266 Ark. 870, 587 S.W.2d 78 (1979), or where the author of the medical report is in court to testify and is subject to cross-examination. *See Southern Farm Bureau Casualty Ins. Co.* v. *Pumphrey*, 256 Ark. 818, 510 S.W.2d 570 (1974).

■ The purpose of § 9-10-108 is to relax these foundational requirements and make it less difficult to introduce paternity testing results into evidence. However, to insure the reliability of this type of testing, the foundational prerequisites in the statute must be met. *See Newton* v. *Clark*, 266 Ark. 237, 582 S.W.2d 955 (1979). In light of the fact that recently developed genetic testing can, with a high degree of certainty, identify the father of a child and, thus, be viewed as conclusive by the fact-finder in paternity suits, we do not think that strict adherence to the statutory prerequisites is unreasonable.

In *Tolhurst* v. *Reynolds*, 21 Ark. App. 94, 729 S.W.2d 25 (1987), we upheld the trial court's refusal to admit a similar blood test report because the persons testifying about the report were not the persons who actually conducted the test. In that case the person supervising the tests and the person who verified the results testified, but both admitted that they did not actually perform the tests. We held that the person making the test must make the verification on the test. Since that was not done in this case we must reverse and remand.

■ In this case, the appellee has totally failed to establish the statutory foundation which is a prerequisite to admission into evidence. There is nothing in the report to indicate the identity of the person who performed the test or whether the person who performed the test was a duly qualified expert. Although the report is signed by Dr. Smith and states that Dr. Smith is the laboratory director, there is nothing in the report to indicate that Dr. Smith was the person who performed the test, or that he was a qualified expert. On this record we cannot say that a proper foundation was laid. *See Newton* v. *Clark*, 266 Ark. 237, 582 S.W.2d 955 (1979); *Simolin* v. *Wilson*, 253 Ark. 545, 487 S.W.2d 603 (1972).

The appellant also argues that the trial court erred in allowing the decedent's former attorney to testify because it violated the lawyer-client privilege set out at Ark. R. Evid.

502(b). Mr. Cambiano testified that the paternity report came from his files. He also testified that the decedent admitted to him that he had fathered the children, that he had visited the children and had taken them gifts, and that he was willing to support them but did not want to be forced to by the courts.

The appellant first asserts that it was error for the trial court to introduce the report into evidence because it came from Mr. Cambiano's files and was privileged. We address this issue and the appellant's issue concerning Mr. Cambiano's testimony because they are likely to recur in another trial.

■ The general rule of attorney-client privilege is set forth in Ark. R. Evid. 502(b):

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

In Ark. R. Evid. 502(a) (4), a "representative of the lawyer" is defined as "one employed by the lawyer to assist the lawyer in the rendition of professional services." Furthermore, the privilege may be claimed by the personal representative of a deceased client. Ark. R. Evid. 502(c).

■ The communication from National Paternity Laboratories to Mr. Cambiano was not a communication protected by the attorney-client privilege. Mr. Cambiano testified that the blood tests were ordered by the county court and clearly National Paternity Laboratories did not qualify as a "representative of the lawyer." We cannot say that the circuit court erred in admitting Mr. Cambiano's testimony about the report or in admitting the report into evidence.

The appellant also contends that it was error to allow Mr. Cambiano to testify about what the decedent told him. The appellee argues that there is an exception to the attorney-client privilege in accordance with Ark. R. Evid. 501(d)(2) which provides in pertinent part:

> (d) Exceptions. There is no privilege under this rule:
>
> . . .
>
> (2) Claimants through same deceased client. As to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transactions.

The appellee contends that, because the appellant is an heir of the decedent and she is making a claim against the estate on behalf of her children, both parties are claiming "through the same deceased client."

■ On this record, we cannot determine whether the exception applies. It is clear that the appellant is the administrator of the estate, but that does not necessarily mean that he is claiming through the decedent. There are some comments by the appellant's attorney which indicate that the appellant is the decedent's brother and is a legatee, but these comments were made in arguments directed to the trial court. Argument and comments by attorneys are not evidence. *See* AMI Civil 3d, 101(e) (1989).

■ We hold that the trial court erred in admitting the blood test report into evidence because an adequate foundation was not laid. Furthermore, there has been a failure of proof as to whether or not the testimony of Mr. Cambiano was privileged. Because the report was erroneously admitted, and because we are unable to determine whether Mr. Cambiano's testimony was privileged, we reverse and remand for further proceedings consistent with this opinion.

JENNINGS and ROGERS, JJ., dissenting.

JUDITH ROGERS, Judge, dissenting. Because I cannot agree with the majority that the trial court abused its discretion in admitting the blood test report into evidence, I dissent.

In 1985, the General Assembly amended Ark. Stat. Ann. Section 34-705.2 to provide that a written report of the blood test results by a duly qualified expert performing the tests, certified by an affidavit duly subscribed and sworn to by him before a notary public, may be produced in paternity actions without calling the expert as a witness; and, if either party desires to question the expert, the party shall have him subpoenaed within a reasonable time before trial. *See* Ark. Stat. Ann. Section 34-705.2 (Supp. 1985). Arkansas Statutes Annotated Section 34-705.2 (Supp. 1985) is now codified at Ark. Code Ann. Section 9-10-108(c)(2) (1987).[1] In amending Ark. Stat. Ann. Section 34-705.2 in 1985, the General Assembly made it much easier to admit these reports into evidence and placed the burden of producing the expert upon the party wishing to question him. Here, appellant made no attempt to produce the expert certifying the report for examination.

In the majority opinion, it is stated that strict adherence to the statutory foundational prerequisites is required in these cases. I do not agree that such strict adherence was the intent of the legislature. In construing a statute, it is this Court's duty to ascertain and give effect to the intent of the legislature. *Williams v. City of Pine Bluff*, 284 Ark. 551, 554, 683 S.W.2d 923 (1985); *Thompson v. Younts*, 282 Ark. 524, 527, 669 S.W.2d 471 (1984). Every effort must be made to give effect to the legislative purpose in enacting the statute, and strict and literal meaning of any section of the statute ought not to prevail where it is opposed to the intention of the General Assembly. *Garrett v. Cline,* 257 Ark. 829, 831, 520 S.W.2d 281 (1975). *Accord Henderson v. Russell*, 267 Ark. 140, 143, 589 S.W.2d 565 (1979). Further, statutes are to be construed with reference to the public policy which they are designed to accomplish. *Sanyo Mfg. Corp. v. Stiles*, 17 Ark. App. 20, 23, 702 S.W.2d 421 (1986); *Feagin v. Everett*, 9 Ark. App. 59,

---

[1] This code section was extensively amended by the General Assembly in March of 1989. The 1989 amendment permits a written report of the test results by a duly qualified expert under whose supervision and direction the tests and analysis have been performed, certified by an affidavit before a notary public, to be introduced into evidence without calling the expert as a witness. The amendment also provides that, if either party desires to question the expert certifying the results, the party shall have the expert subpoenaed within a reasonable time prior to trial.

66, 652 S.W.2d 839 (1983).

It is true that there is very little information about the qualifications of Randall Smith. From the report, we only know that Smith purports to have a Ph.D. and that he was serving as "Laboratory Director" on the 8th day of September, 1983, when he signed the report. From Joe Cambiano's testimony, we also know that this report resulted from the court's order that blood tests be performed. The circuit judge was satisfied that Smith met the qualifications of an "expert" within the meaning of Ark. Code Ann. Section 9-10-108(c)(2) (1987). Whether a witness may give expert testimony rests largely within the sound discretion of the trial court and will not be reversed unless an abuse of discretion is found. *Carter* v. *St. Vincent Infirmary*, 15 Ark. App. 169, 171, 690 S.W.2d 741 (1985); *Whaley* v. *State*, 11 Ark. App. 248, 253, 669 S.W.2d 502 (1984). The determination of the qualifications of a witness with respect to knowledge or special experience concerning the matters about which he testifies rests largely in the discretion of the trial court, and such determination will not be disturbed by an appellate court, except in extreme cases where it is manifest that the trial court has fallen into error or abused its discretion. *Arkansas-Louisiana Gas Co.* v. *Maxey*, 245 Ark. 15, 19, 430 S.W.2d 866 (1968). This is true even though the appellate court might have decided the question differently if it had been presented to it in the first instance. *Firemen's Ins. Co.* v. *Little*, 189 Ark. 640, 648, 74 S.W.2d 777 (1934).

In *Dildine* v. *Clark Equip. Co.*, 282 Ark. 130, 135-36, 666 S.W.2d 692 (1984), the Arkansas Supreme Court said:

> Obviously no firm rule can be derived which would serve uniformly as a means of measuring the qualifications of an expert, but the tone of our cases suggests that too rigid a standard should be avoided and if some reasonable basis exists from which it can be said the witness has knowledge of the subject beyond that of persons of ordinary knowledge, his evidence is admissible. *Roark Transportation* v. *Sneed, supra*; *Blanton* v. *Mo. Pac. Rd. Co.*, 182 Ark. 543, 31 S.W.2d 947 (1930). In *Firemen's Insurance Co.* v. *Little*, 189 Ark. 640, 74 S.W.2d 777 (1934) we approved the following language:

> A skilled witness is one possessing, in regard to a particular subject or department of human activity knowledge and experience which are not acquired by ordinary persons. Where he testifies as to facts, he must be shown to have adequate knowledge of the matters of which he speaks, and where he states an inference he must have the ability, skill, and experience, not only to observe accurately, but to draw the correct conclusion from what he observes. Such a witness may be qualified by professional, scientific, or technical training, or by practical experience in some field of activity conferring on him special knowledge not shared by mankind in general, the rule in this respect being that one who had been engaged for a reasonable time in a particular profession, trade, or calling, will be assumed to have the ordinary knowledge common to persons so engaged.

In *Scott* v. *Jansson*, 257 Ark. 410, 413, 516 S.W.2d 589 (1974), the Arkansas Supreme Court held that the trial court did not abuse its discretion in admitting the testimony of a police officer to express an opinion as to whether an automobile's brakes had worked properly. The court stated:

> [T]he trial court did not abuse its discretion in ruling that Officer Robertson, an experienced highway patrolman, was qualified to express an opinion even though he was not, in the language of counsel, "a brake expert." If counsel doubted the officer's familiarity with the effect of defective brakes upon skid marks, a request should have been made that he be put on voir dire to show his incompetency to testify. *Brown* v. *State*, 24 Ark. 620 (1897); McKelvey on Evidence, Section 187 (5th ed., 1944). Absent such a request reversible error is not shown, for upon a retrial it might turn out that the officer was fully qualified to testify as he did.

I am also not convinced that appellant properly preserved an objection to the introduction of the report on the specific ground that it does not show whether Smith actually performed the tests. A timely objection must be made at trial to preserve an alleged error for review, and the only specific objection available on

appeal is the specific objection made in the trial court. *Whaley*, 11 Ark. App. at 253. I do not believe that the objections by counsel for appellant, set forth in the majority opinion, are sufficiently specific to preserve for appellate review the issue of whether Smith actually performed the tests.

In sum, the majority's decision to reverse this case and remand it for yet another trial is totally at odds with the applicable standard of review and with the General Assembly's apparent intent in relaxing the foundational requirements for the introduction of these blood test reports. I also see no reason to reach the issue of whether the exception to the attorney-client privilege found in Ark. R. Evid. 502(d)(2) applies here, because I believe the blood test report was admissible. With the report admitted into evidence, there was overwhelming evidence of the decedent's paternity; therefore, even the erroneous admission of Mr. Cambiano's testimony would have been harmless error. Error is no longer presumed to be prejudicial; unless the appellant demonstrates prejudice accompanying error, this court will not reverse. *Hibbs* v. *City of Jacksonville*, 24 Ark. App. 111, 112, 749 S.W.2d 350, 351 (1988).

JENNINGS, J., joins this opinion.