Wendy L. PARKS v. Tommie M. EWANS

93-866                                    871 S.W.2d 343

Supreme Court of Arkansas
Opinion delivered February 21, 1994

*Steven W. Elledge*, for appellant.

*John D. Bridgforth, P.A.*, for appellee.

ROBERT L. BROWN, Justice. This appeal concerns the admissibility of blood tests taken at the behest of the appellant, Wendy L. Parks, to establish the paternity of the putative father, appellee Tommie M. Ewans. The chancellor, sitting as juvenile judge, refused to admit the blood tests into evidence at the paternity trial due to the absence of a chain-of-custody affidavit as required by Ark. Code Ann. § 9-10-108 (a)(3)(B)(i) (Repl. 1993). We hold that the chancellor erred in his ruling, and we reverse his decision and remand the matter for a new trial.

On December 7, 1992, Wendy Parks, the natural mother of

Tommie Ewans, Jr., filed her complaint against Tommie M. Ewans and alleged that he was the minor child's father. She prayed for a finding of paternity, child and medical support, and health care coverage. That same date, Ewans filed an objection "to being the father" and stated his willingness "to take any procedures to be sure." Ewans later filed a formal answer denying that he was the father.

On January 5, 1993, Ewans apparently allowed blood to be drawn, and blood was also drawn from the minor child and from Parks. Tests on the samples were performed on January 20, 1993, by Genetic Design, a paternity evaluation firm in Greensboro, North Carolina. On April 9, 1993, which was the Friday before the Monday trial, Ewans filed a motion challenging the paternity tests. In the motion, Ewans contended that he had not filed the motion 30 days before trial because he did not retain counsel until March 8, 1993.

Trial commenced on April 12, 1993, and at the trial the chancellor granted Ewans's motion to suppress the paternity report due to the failure of Parks to provide a chain-of-custody affidavit as required by statute. Parks then moved for a continuance based on surprise which was denied. The chancellor found that Parks had not met her burden of proof to establish Ewans as the father of the minor child and, accordingly, he entered an order of dismissal.

The primary issue raised on appeal is whether the chancellor erred in suppressing the blood test report. We conclude that he did. The relevant statute reads:

> (3)(A) A written report of the test results prepared by the duly qualified expert conducting the test, or by a duly qualified expert under whose supervision or direction the test and analysis have been performed, certified by an affidavit duly subscribed and sworn to by him or her before a notary public, may be introduced in evidence in paternity actions without calling the expert as a witness unless a motion challenging the test procedures or results has been filed within thirty (30) days of the trial on the complaint and bond posted in an amount sufficient to cover the costs of the duly qualified expert to appear and testify.

(B)(i) If contested, documentation of the chain of custody of tissue and blood samples taken from test subjects in paternity testing shall be verified by affidavit of one (1) person witnessing the extraction, packaging, and mailing of said samples and by one (1) person signing for said samples at the place where same are subject to the testing procedure.

Ark. Code Ann. § 9-10-108 (a)(3)(A) & (B)(i) (Repl. 1993).

Our interpretation of § 9-10-108 (a)(3)(B)(i) turns on the meaning of "if contested" relative to the chain-of-custody affidavit. Admittedly, this subsection and § 9-10-108 (a)(3)(A) can be read to require that both a motion challenging the test results and a motion contesting chain-of-custody of the samples be filed within 30 days of trial. They can also be read as limiting the 30-day motion requirement to a challenge to the test results under § 9-10-108 (a)(3)(A). It would be an anomalous situation, however, for us to conclude that a putative father could wait until the Friday before the Monday trial, which was the case here, or even until the trial itself to contest the absence of an affidavit establishing chain of custody. Under such circumstances, the natural mother would have no warning that the blood tests were contested on foundation grounds until the eleventh hour, or later. That, of course, would be patently unfair.

The policy behind § 9-10-108 (a)(3) was to ease requirements for the admissibility of blood tests. *Boyles* v. *Clements*, 302 Ark. 575, 792 S.W.2d 311 (1990); *see also Ross* v. *Moore*, 30 Ark. App. 207, 785 S.W.2d 243 (1990). Parks was entitled to reasonable notice that the test results were contested to give her the opportunity to obtain the necessary affidavit. A challenge to the blood tests filed the Friday before the Monday trial was not reasonable notice. Moreover, even that challenge could be read to relate only to the test results themselves and not to a contest on chain-of-custody grounds.

In sum, we interpret § 9-10-108 (a)(3)(B)(i) to require a contest on chain-of-custody grounds within 30 days of trial. Certainly, the overall scheme of § 9-10-108 (a)(3) supports the 30-day requirement in both subsections. The chancellor erred in suppressing the test results. The test results are admissible on

the basis that Ewans failed to mount the contest to chain of custody in timely fashion.

The order of dismissal is reversed, and the matter is remanded for further proceedings.