Tommy BAIN *v.* STATE of Arkansas, Child Support
Enforcement Unit, and Tina Lawrence

CA 96–363 937 S.W.2d 670

Court of Appeals of Arkansas
Division IV
Opinion delivered January 29, 1997

8

*Thaxton, Hout & Howard,* by: *Marvin D. Thaxton,* for appellant.

*Vickie A. Warner,* for appellee.

ANDREE LAYTON ROAF, Judge. This is the second appeal by Tommy Bain in this paternity case. We dismissed Bain's first appeal in an unpublished opinion issued December 8, 1994, under Ark. R. Civ. P. 54(b), because the judgment of paternity did not provide for child support and was thus not a final, appealable order. The trial court entered an order for regular and back support on February 6, 1996, and Bain again appeals the adjudication of paternity. He asserts that the chancellor erred in admitting into evidence reports of two blood tests performed on him; that the testimonial evidence does not support a finding of paternity without the erroneously admitted blood-test reports; that the decision should be reversed because the chancellor evidenced a lack of impartiality; and that the appellee should be ordered to repay all sums paid pursuant to the order of support if the paternity judgment is reversed. We hold that the chancellor properly admitted the first of the two blood-test reports and affirm.

Tina Lawrence claims that Bain is the father of her child born on February 18, 1991. A paternity action was filed against Bain by the appellee, Child Support Enforcement ("CSE"), on June 12, 1991. An order for blood draw designating Genetic Design, Inc. ("Genetic Design"), as the court-appointed expert to perform the blood test was entered on July 10, 1991. The test was instead performed by Roche Biomedical Labs ("Roche"). Roche submitted a report dated September 20, 1991, finding a 99.98% probability that Bain was the father of Lawrence's child.

After receiving the test result, Bain filed an answer denying paternity and cross-complained, alleging that James Priddy was the father of Lawrence's child. Bain asked that a blood test also be performed on Priddy. Priddy voluntarily submitted to the blood test, which was also performed by Roche; CSE did not obtain a court order authorizing this test.

During a hearing on the merits held on May 11, 1992, Lawrence testified that she had sexual relations with Bain during the period of conception, and also testified to relations with James Priddy approximately a week before she learned she was pregnant. Bain denied having any sexual contact with Lawrence. CSE attempted to introduce the blood-test reports on Bain and Priddy. The trial court admitted the report on Bain over the objection of Bain's counsel that the test was not performed by the court-appointed expert as required by Arkansas statute. However, the court sustained Bain's objection to admission of the report of Priddy's test.

At the conclusion of the hearing, the trial court requested briefs on the issue of whether additional testing of Bain could be ordered. An additional test was performed on Bain by Genetic Design and its report dated December 31, 1992, found that there was a 99.97% probability that Bain was the father. A second hearing was held on February 5, 1993, during which Bain objected to the admission of the Genetic Design report because it was not properly certified as required by Arkansas statute. The trial court again overruled Bain's objection and allowed the second test report to be introduced.

On August 27, 1993, the trial court entered an order which found that Bain was the father of Lawrence's child based on the second blood-test report and on the testimony of the parties and other witnesses. Bain's appeal of this order was dismissed for lack of finality. A subsequent hearing was conducted during which the amount of regular and back child support was determined. Bain again appeals the trial court's determination that he was the father of Lawrence's child.

Bain's first two arguments on appeal pertain to the admission of the reports of the two blood tests performed on him. Bain relies on the language of Ark. Code Ann. § 9-10-108 (1987) and on two cases decided by this court and the Arkansas Supreme Court for his argument that neither of these reports should have been admitted into evidence. Because these arguments are related, we discuss them together.

At the time the two blood tests were performed and the hearing held on the merits of the paternity complaint, § 9-10-108 provided in pertinent part:

> (a)(1) Upon motion of either party in a paternity action, the trial court shall order that the putative father, mother, and child submit to blood tests or other scientific examinations or tests. . . .
> (2) *The tests shall be made by a duly qualified expert or experts to be appointed by the court.*
> (3)(A) A written report of the test results prepared by the duly qualified expert conducting the test, *or by a duly qualified expert under whose supervision or direction the test and analysis have been performed, certified by an affidavit* duly subscribed and sworn to by him or her before a notary public, may be introduced in evidence in paternity actions without calling the expert as a witness unless a motion challenging the test procedures or results has been filed within thirty (30) days of the trial on the complaint and bond is posted in an amount sufficient to cover the costs of the duly qualified expert to appear and testify. (Emphasis supplied.)

(Ark. Code Ann. 9-10-108 (a)(1)-(3) (Repl. 1993) (now amended as Ark. Code Ann. 9-10-108 (a)(1), (4), and (5)(A)).

Bain asserts that the first blood test should have been excluded because Roche was not named in the blood-test order as the expert appointed by the court, as required by § 9-10-

108(a)(2). Bain further relies on the holdings in *Ross v. Moore*, 30 Ark. App. 207, 785 S.W.2d 243 (1990), and *Boyles v. Clements*, 302 Ark. 575, 792 S.W.2d 311(1990), for the proposition that strict adherence to the statute is required before a blood-test report may be admitted in the absence of the expert who performed or supervised the test.

With regard to the second blood test performed by Genetic Design, Bain asserts that because the written report does not comply with the foundational prerequisites set forth in § 9-10-108 (a)(3)(A), the holdings in *Ross* and *Boyles* also mandate its exclusion.

In the case of the second test performed by Genetic Design, Bain's argument is well taken. Section 9-10-108(a)(3)(A) requires that a report be certified by the duly qualified expert who either conducted the test *or* supervised or directed the test and analysis, if the report is to be introduced without calling the expert as a witness. The report submitted by Genetic Design was signed by Dr. Deborah Cutter, who certified under oath only that she had "read the foregoing report" and "that the facts and results therein are true and correct as I verily believe." The certification lists Cutter, along with seven others, as directors or associate directors of Genetic Design. In a separate affidavit, which set forth her qualifications as an expert in genetic testing, Cutter simply stated that she was an associate director of Genetic Design.

We do not agree with CSE's assertion that Bain was required to give 30 days' notice in order to object to admission of the report, because such notice is required only where the chain of custody, test procedures, or results are contested. *See Parks v. Ewans*, 316 Ark. 91-B, 871 S.W.2d 343 (1994). Nor do we agree with CSE that Cutter's certification and affidavit constitute strict compliance with § 9-10-108(a)(3)(A), and that the expert need not attest that he or she personally either performed or directed the performance of the test. Moreover, this issue was addressed in our holding in *Ross, supra*, which involved a similarly defective test report. In *Ross*, a blood-test report was admitted over the objection of the putative father. At the time, the paternity-test statute required that the report be certified by the expert who performed

the test. The report in *Ross*, like that of Genetic Design, was merely signed by the laboratory director and did not indicate that he performed the test or whether he was a qualified expert. This court held that the statutory foundation, which was a prerequisite to admission of the report, had not been established and that the trial court had thus abused its discretion in admitting the report.

 Although the statute has since been amended to also allow for certification by an expert under whose supervision or direction the test has been performed, Cutter's statements that she is a director of Genetic Design and that she had read the report likewise fall short of meeting the foundational prerequisites for admission under the amended statute. Moreover, the following rationale for requiring strict adherence set forth in *Ross* applies equally in the instant case:

> Prior to the adoption of Ark. Code Ann. 9-10-108, this report would have been considered inadmissible hearsay, and in order to be admissible and fall into one of the exceptions to the hearsay rule, certain foundational requirements must have been met. . . .
>
> The purpose of 9-10-108 is to relax these foundational requirements and make it less difficult to introduce paternity testing results into evidence. However, to insure the reliability of this type of testing, the foundational prerequisites in the statute must be met. *See Newton v. Clark*, 266 Ark. 237, 582 S.W.2d 955 (1979). In light of the fact that recently developed genetic testing can, with a high degree of certainty, identify the father of a child and, thus, be viewed as conclusive by the fact-finder in paternity suits, we do not think that strict adherence to the statutory prerequisites is unreasonable.

*Id.* at 210-11, 785 S.W.2d at 245.

 Finally, the supreme court has adopted the rationale and conclusion of *Ross* in a case involving a report that was only signed by two laboratory directors and notarized, stating:

> As in *Ross v. Moore, supra,* there is nothing in the report to indicate the identity of the person who performed the test or whether the person who performed the test was a duly qualified expert. Although the report is signed by Dr. Smith and Mr. Gutendorf and states their positions to be Laboratory Director

and Scientific Director respectively, there is nothing in the report to indicate that these two men performed the test or that they are qualified experts.

*Boyles*, 302 Ark. at 579, 792 S.W.2d at 314. We therefore hold that the trial court abused its discretion in admitting the second test performed by Genetic Design.

■ As to the first test performed by Roche, we reach a different conclusion. Although CSE does not argue the merits of this issue, and merely states that the question is moot because the trial court did not rely on the first report in making the adjudication of paternity, we do not agree that the matter is moot. Rather, if the trial court in fact erroneously admitted this report, the error would be harmless if the trial court relied solely upon the report by Genetic Design. Moreover, in reviewing chancery cases, we consider the evidence de novo on the record. *Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993). Accordingly, we can consider the report of the Roche blood test, if properly admitted, in determining whether the chancellor's finding of paternity is clearly against the preponderance of the evidence, and we can affirm if the chancellor reached the right conclusion for the wrong reason. *See, e.g. Estate of Gaston v. Ford Motor Co.*, 320 Ark. 699, 898 S.W.2d 471 (1995); *Southern Farm Bureau Cas. Ins. Co. v. Pettie*, 54 Ark. App. 79, 89, 924 S.W.2d 828 (1996).

■ In arguing that the Roche report was erroneously admitted, Bain again relies on *Ross* and *Boyles* for the proposition that the statutory directive that the expert be appointed by the court requires strict compliance. He does not challenge the test procedures or the results of the test performed by Roche, nor does he argue that Roche is not an expert qualified to perform paternity blood tests or that he would have objected to the appointment of Roche. In short, he does not suggest that he was in any way prejudiced by the substitution of Roche in the first blood test.

After Bain objected to the admission of the Roche report, CSE advised the trial court that it had used both Roche and Genetic Design to perform paternity blood tests and that both companies had been approved by the court in prior cases. However, CSE stated that their office had switched to Roche exclu-

sively after the entry of Bain's blood-test order, because of problems with Genetic Design's chain of custody and affidavits. CSE characterized the erroneous designation of Genetic Design in the order as an administrative error and argued that the use of Roche was substantial compliance with the statute. The trial court found that there had been substantial compliance or good-faith compliance with the statute, even though Roche was not specifically named in the blood-test order, and that Roche was a recognized company and denied Bain's motion to exclude the report.

Under the circumstances of this case, we cannot say that the trial court erred in admitting this report. The Roche report was properly certified by a director who set forth his expert qualifications and attested that he had supervised and directed the test, and neither the holdings nor the rationale set forth in *Ross* and *Boyles*, which pertain to the foundational requirements of the report, mandate the exclusion of this report.

Bain next argues that the trial court erred in finding that he was the father of Lawrence's child. He in essence argues that Lawrence's uncorroborated testimony that she had sexual relations with Bain and her admission that she had sexual relations with Priddy shortly before learning she was pregnant do not support the finding of paternity if the two blood-test reports were erroneously admitted and are thus excluded from evidence. Lawrence's testimony may be summarized as follows. She stated that she had sexual relations with Bain five to ten times between April and July of 1990, at her home and one time at his place of employment. She stated that her doctor advised her that her probable date of conception was in May of 1990, and that she first had sexual relations with James Priddy the weekend before she learned she was pregnant on June 18, 1990. She candidly testified that she wanted a blood test because although she believed Bain to be the father of her child, there was a slight possibility that Priddy could have fathered the child.

Bain denied having any sexual relations with Lawrence, but admitted that he visited her in her home during the relevant period. He and his wife testified that he was completely impotent

during the months of April through July 1990 due to medication he was taking for high blood pressure. Bain's pharmacist testified that his impotence could have resolved with intermittent withdrawal from the medication. Moreover, in a paternity client questionnaire completed by Lawrence for CSE in April 1991 when her child was two months old, she stated that Bain was unable to achieve an erection the first five or six times they attempted intercourse. Finally, the Roche blood-test report found a 99.98% probability that Bain was the father of Lawrence's child. Arkansas Code Annotated § 9-10-108 (a)(4) provides as follows:

> If the results of the paternity tests establish a ninety-five percent (95%) or more probability of inclusion that the putative father is the biological father of the child, after corroborating testimony of the mother in regard to access during the probable period of conception, such shall constitute a prima facie case of establishment of paternity, and the burden of proof shall shift to the putative father to rebut such proof.

Thus, the Roche blood-test report along with the corroborating testimony of Lawrence constitute a prima facie case of establishment of paternity, and Bain has not met the burden of rebutting this proof. Moreover, in a review of chancery court findings, we will not reverse a finding of fact made by the chancellor unless it is clearly erroneous. *Erwin L. D. v. Myla Jean L.*, 41 Ark. App. 16, 847 S.W.2d 45 (1993). Based on the evidence in the record, we cannot say that the trial court's finding of paternity was clearly against the preponderance of the evidence.

▇▇ ▇▇ Bain next argues that the decision of the trial court should be reversed because the chancellor evidenced a lack of impartiality during the proceedings. Bain in essence complains of certain remarks the trial court made in the first hearing, during discussion of whether the court could order a second blood test of Bain. Bain's counsel asserted that CSE should be required to go forward with its case without benefit of the Roche blood test or further testing. The trial court's remarks occurred during this discussion and indicated a concern about the interest of the child and the ability of the court to require further blood testing if necessary to reach a decision. Bain also argues throughout his brief that the second blood-test order is evidence of the chancellor's

partiality. Bain offers no citation of authority or convincing argument on this point. This court has long held that assignments of error unsupported by convincing argument or authority will not be considered on appeal. *Rogers. v. Rogers*, 46 Ark. App. 136, 877 S.W.2d 936 (1994). Moreover, the welfare of the child is paramount even in paternity proceedings, for the major purpose of Arkansas's filiation law is to identify the putative father so that he may assume his equitable share of the responsibility to his child. *See Davis v. Office of Child Support Enforcement*, 322 Ark. 352, 908 S.W.2d 649 (1995).

Because we affirm the finding of paternity, we do not reach Bain's final argument that he is entitled to a refund of monies paid pursuant to the order of support. We also note that this action was filed by CSE when the minor child was four months old, and had not been finalized as the child approached his seventh birthday in part due to the failure of CSE to ensure that its crucial blood-test reports meet the requirements of the paternity testing statute before introducing them into evidence.

Affirmed.

ROBBINS, C.J., and NEAL, J., agree.