Cite as 2020 Ark. App. 9

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-19-19

| | |
|---|---|
| SANDRA JOHNSON, ADMINISTRATOR, ESTATE OF PERRY JOHNSON, JR.; AND ESTATE OF PERRY JOHNSON, JR. | OPINION DELIVERED: JANUARY 15, 2020 |
| APPELLANTS | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [35DR-17-369] |
| V. | |
| VINCENT OSRIC JOHNSON; TAMMY JOHNSON; TRINA SURRATT; SHAYLA BRENTLEY MOORE; STACY ROGERS; DEMARLONE BELL; AND KENNETH JOHNSON | HONORABLE LEON N. JAMISON, JUDGE |
| | AFFIRMED |
| APPELLEES | |

**ROBERT J. GLADWIN, Judge**

Sandra Johnson, administrator of the estate of Perry Johnson, Jr., and the estate of

Perry Johnson, Jr., appeal the October 12, 2018 judgment of paternity entered by the

Jefferson County Circuit Court. The sole issue is whether the circuit court erred in

admitting appellees' reports of DNA test results into evidence when it found substantial

compliance with Arkansas Code Annotated section 9-10-108 (Repl. 2015). We affirm.

I. *Facts*

Perry Johnson, Jr. (P.J.), died on December 6, 2016, and Sandra Johnson, his widow

and wife of fifty years, was appointed personal representative of the estate. A paternity

action subsequently was filed alleging that P.J. is the biological father of the appellees,

Vincent Osric Johnson, Tammy Johnson, Trina Surratt, Shayla Brentley Moore, Stacy Rogers, Demarlone Bell, and Kenneth Johnson. The action was initially filed against Sandra Johnson, administrator of the estate of Perry Johnson, Jr., but was later amended to name the estate of Perry Johnson, Jr., as a separate defendant.

The parties entered into a partial settlement resulting in an order filed by the circuit court on June 1, 2017. This order, provided, among other things, for DNA paternity testing initiated by appellees. It also provided that if the DNA testing results were in proper form as required by law for such testing and reflected a finding of paternity of 95 percent or greater for an appellee, a presumption of paternity would exist for that particular person.

On September 5, appellants filed a motion for a chain-of-custody affidavit alleging deficiencies in a set of proffered DNA test results. Appellants' motion was granted by the circuit court on September 26, and the resulting order described numerous deficiencies in the proffered test results and set forth instructions as to how they must be cured.

Appellees filed an affidavit of test results on March 22, 2018, with attachments, including an affidavit executed by Joy Johnson, Ph.D., the assistant lab director of DNA Diagnostics Center, and certifications or statements regarding the integrity of the samples. Appellants filed a motion to enforce the chain-of-custody order and objections to DNA testing results on April 6, in which they argued solely that appellees had not satisfied Arkansas law pertaining to chain of custody pursuant to Arkansas Code Annotated section

9-10-108(a)(5)(B) (Repl. 2015). Appellees responded to appellants' motion on April 9 and attached to the response more than eighty pages of supporting documents.

During a telephone conference on April 11, the circuit court determined that the record was complete and that it could rule on the admissibility of the DNA records. The circuit court entered an order on September 17 finding that appellees were in substantial compliance with the chain-of-custody statute, section 9-10-108(a)(5)(B). The circuit court also found that appellants' pending motion to enforce the chain-of-custody order was moot, thereby denying appellants' pending motion and denying their objections to the subject DNA testing results. The circuit court found that appellees' argument in paragraph 5 of their response was persuasive:

> 5. Further, all of the DNA Test Results contain supporting documentation of the collection of the samples and receipt of samples at the testing facility. The Collectors of the specimens certify that they have collected, packaged and sealed the specimens and witnessed the signatures of the specimen donors. Further, the Collectors affirm under penalty of perjury that no tampering with the specimen(s) occurred while under the collector's control. Additionally, the testing facility provided a statement that the specimens were received with no evidence that the specimens had been tampered with or the package opened. The Assistant Laboratory Director of DNA Diagnostic Center certified that the packages containing the DNA specimens of the Plaintiff were examined for integrity upon receipt at the lab and that there was no sign of tampering during transit. This documentation is provided for the testing of each of the specimens provided by each of the Plaintiffs and attached hereto as Exhibit A and incorporated by reference.

On October 12, a judgment of paternity was entered by the circuit court consistent with its previous order. The court held, among other things, that all the appellees are P.J.'s biological children. Appellants filed a timely notice of appeal on October 15.

II. *Standard of Review and Applicable Law*

A circuit court has wide discretion in evidentiary determinations. *Wakefield v. Bell*, 2018 Ark. App. 120, at 3, 542 S.W.3d 908, 910. On appeal, we will not reverse a circuit court's ruling on the admissibility of evidence absent an abuse of discretion. *Id.* at 3, 542 S.W.3d at 910–11. Neither will we reverse on an evidentiary ruling absent a showing of prejudice. *Id.* at 3–4, 542 S.W.3d at 911.

Arkansas Code Annotated section 9-10-108(a)(4)–(5) provides the following requirements for when a circuit court orders paternity testing:

(4) The tests shall be made by a duly qualified expert or experts to be appointed by the court.

(5)(A) A written report of the test results prepared by the duly qualified expert conducting the test or by a duly qualified expert under whose supervision or direction the test and analysis have been performed certified by an affidavit duly subscribed and sworn to by him or her before a notary public may be introduced in evidence in paternity actions without calling the expert as a witness unless a motion challenging the test procedures or results has been filed within thirty (30) days of the trial on the complaint and bond is posted in an amount sufficient to cover the costs of the duly qualified expert to appear and testify.

(B)(i) If contested, documentation of the chain of custody of samples taken from test subjects in paternity testing shall be verified by affidavit of one (1) person witnessing the procedure or extraction, packaging, and mailing of the samples and by one (1) person signing for the samples at the place where the samples are subject to the testing procedure.

(ii) Submission of the affidavits along with the submission of the test results shall be competent evidence to establish the chain of custody of these specimens.

III. *Discussion*

4

Appellants argue that "substantial compliance," the standard employed by the circuit court, is insufficient as a matter of law to render the DNA testing results admissible and to deny their pending motion to enforce chain-of-custody order and objection to the DNA testing results. Accordingly, appellants maintain that there is no valid evidentiary basis for the entry of the October 12, 2018 judgment of paternity.

Appellants submit that uncured deficiencies of the DNA test results remained as set forth in their April 6, 2018 motion, which states as follows: "None of the collectors' statements and none of the recipients' statements attached as Exhibit 'A' to the [appellees'] response to motion filed April 9, 2018, are verified by sworn affidavit as required by Arkansas law and by the September 26, 2017 order of the circuit court, specifically, at paragraphs number 3 and 4 thereof." Moreover, appellants note that the results for Sara Kenner were incomplete and unverified, as addressed in paragraph 4 of the court's order. Ultimately, the missing information for Ms. Kenner's results was provided, but appellants point out that it was not accompanied by a sworn affidavit as required by the circuit court's order.

We first note that appellants do not challenge the purity of the specimens tested, the testing procedures, the reliability of the results of the tests performed by DNA Diagnostics Center, or the expert qualifications of DNA Diagnostics Center to perform paternity blood tests. Appellants argue only that the chain-of-custody affidavits do not strictly comply with the statute concerning the chain of custody of DNA test results under section 9-10-108(a)(5)(B).

For the proposition that strict compliance with the statute is required, appellants cite *Bain v. State*, 56 Ark. App. 7, 13, 937 S.W.2d 670, 673 (1997) (citing *Ross v. Moore*, 30 Ark. App. 207, 210–11, 785 S.W.2d 243, 245 (1990)); *Boyles v. Clements*, 302 Ark. 575, 578, 792 S.W.2d 311, 313 (1990); and *Laden v. Morgan*, 303 Ark. 585, 798 S.W.2d 678 (1990). These opinions, however, dealt with defective affidavits for test reports under subdivision (a)(5)(A). In those cases, the affiant did not attest that the affiant was an expert who conducted or supervised the test. In the instant case, appellants allege that neither the collectors' statements nor the recipients' statements attached as Exhibit "A" to appellees' response to their motion filed on April 9, 2018, are verified by sworn affidavit.

We note that no previous Arkansas cases have opined as to whether strict compliance with subdivision (a)(5)(B) is required. But *Bain*, *supra*, also involved a challenge under subsection (a)(4) in which the test in question was performed by a different company than the one appointed by the court. The circuit court found that there had been "substantial compliance or good-faith compliance" with the statute, and we affirmed. *E.g.*, *Bain*, 56 Ark. App. at 15, 937 S.W.3d at 674.

Although a criminal case, we cite as instructive our recent decision in *Harris v. State*, 2018 Ark. App. 520, at 10, 561 S.W.3d 766, 772:

> The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. Authentication requirements are satisfied if the circuit court concludes, in its discretion, that the evidence is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant matter. Minor uncertainties in the proof of chain of custody are matters to be weighed by the trier of fact following arguments of counsel, but they do not render the evidence inadmissible as a matter of law.

6

(Internal citations omitted.) In *Harris*, we held, "[C]onsidering that appellant did not contend that the evidence was contaminated, we cannot say that the circuit court abused its discretion in admitting the swabs and rape kit." *Id.* at 13, 561 S.W.3d at 773–74. Despite the instant matter being a paternity-test case, appellants likewise do not allege contamination or otherwise dispute the results; they argue only that the chain-of-custody affidavits do not strictly comply with the statute. Because our abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision—rather it requires that the circuit court act improvidently, thoughtlessly, or without due consideration, *see id.* at 12, 561 S.W.3d at 773—we hold that the circuit court could have concluded from all the materials submitted that, within reasonable probability, the evidence had not been tampered with.

The reports of the DNA test results were submitted with the sworn affidavit of Dr. Johnson, an assistant lab director at the testing facility, who set forth her expert qualifications and attested that she verified the testing was conducted in accordance with lab standards and national standards. Her affidavit certifies that the chain-of-custody documents concerning the tested specimens were signed by the individuals who collected, packaged, and sealed the testing specimens. Dr. Johnson further certified that there was no sign of tampering during transit and once received by DNA Diagnostics Center, the specimens were at all times in the care and custody of DNA Diagnostics Center in an electronically secured facility under her direct supervision.

7

As previously set forth, the circuit court's order that found substantial compliance states that paragraph 5 of appellees' response regarding the supporting documentation regarding the collection, receipt, and treatment of the samples was persuasive. It appears that the circuit court found that the following "collector statement" substantially complied with the subsection (a)(5)(B)(i) requirement of an "affidavit of one (1) person witnessing the procedure or extraction, packaging, and mailing of the samples":

> I certify that I have properly identified the parties and have collected, packaged and sealed the specimen(s) and have witnessed the signatures. I affirm, under penalties of perjury, that no tampering with the specimen(s) occurred while under my control.

Although Dr. Johnson's separate affidavits of DNA test results, sworn before a notary public, satisfy the plain language of the second part of subdivision (a)(5)(B)(i), it is undisputed that the collector's statements were not sworn before a notary public. We note, however, that at the bottom of the pages of the collector's statements there is a different initialed statement by the person who received the specimens at DNA Diagnostics Center, which, along with Dr. Johnson's affidavit, satisfies the second part of division (a)(5)(B).

The circuit court entered the following finding of fact with respect to the issue of admissibility of the report of DNA test results:

> 6. On June 1, 2017, the parties reached a settlement that became the order of this court. The order provided, among other things, that the plaintiffs would undergo DNA paternity testing. Also, the order provided among other things, that the DNA testing results, if in proper form required by law for such testing, reflects a finding of paternity by 95% or greater, then that person will be adjudicated a biological child of Perry Johnson, Jr., and if less than 95%, then that person must establish paternity by the necessary burden of proof by December 1, 2017.

The circuit court also made separate findings with respect to each appellee that there was a 99 percent or greater probability that Perry Johnson III was a half sibling and that the likelihood that they share a common biological parent is very high. The circuit court specifically found that appellants challenged only the chain-of-custody requirements of section 9-10-108(a)(5)(B) and that considering appellees' April 9, 2018 pleading and supporting documentation for each appellees' testing, appellees are now in substantial compliance with both the circuit court's previous order and section 9-10-108.

Subsequent to the *Ross* and *Boyles* opinions, section 9-10-108 was amended to allow for certification by an expert under whose supervision or direction the test has been performed. Here, appellees provided more than eighty pages of documentation regarding the relevant DNA test results, including affidavits duly subscribed and sworn to by Dr. Johnson, the assistant lab director, before a notary public and reports regarding the chain of custody of samples taken from test subjects from a person collecting, packaging, mailing, and receiving the samples. Dr. Johnson's affidavits of DNA test results set forth her position as assistant lab director, her qualifications as an examiner of inherited characteristics, and her qualifications to administer the DNA test. In the affidavits, Dr. Johnson specifically states that there was no sign of tampering during transit and upon receipt; she verified that the tests were conducted in accordance with established standards and that at all times after receipt of the specimens at the laboratory, the specimens were secure in the care and custody of DNA Diagnostics Center and under her direct supervision.

Despite appellants' argument that the DNA test results are inadmissible because "none of the collectors' statements and none of the recipients' statements attached as Exhibit 'A' to [appellees'] response to motion filed April 9, 2018 are verified by sworn affidavit," we note that in the documentation provided by appellees regarding the collection and receipt of the samples at the testing facility, the collectors certify that they have collected, packaged, and sealed the specimens and witnessed the signatures of the specimen donors. The collectors also affirm under penalty of perjury that no tampering with the specimens occurred while under their control and verified the document with their signatures. Further, the testing facility provided a statement that the specimens had been received with no evidence of tampering.

It is undisputed that each of the appellees' DNA test results reflected a finding of paternity of 99 percent or greater, and appellants did not challenge the DNA test results at the circuit court level. Further, as reflected in the circuit court's order, appellants agreed that if in the proper form, DNA test results for each of the appellees reflecting a finding of paternity of 95 percent or greater would be adjudicated a biological child of P.J.

The circuit court found that the supporting documentation submitted by appellees "substantially complied" with the relevant statutory requirements although they were not in the exact proper affidavit form, and, in a case where no challenge to the authenticity of the DNA test results or allegation of tampering thereof, we hold that such compliance is sufficient. We hold that the circuit court did not err in admitting the DNA test results, in

denying appellants' motion to enforce chain-of-custody order and objection to DNA test results, and in issuing the resulting October 12, 2018 judgment of paternity.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Brockman, Norton & Taylor*, by: C. *Mac Norton* and *Zachary Taylor*, for appellants.

*McKissic & Associates, PLLC*, by: *Gene E. McKissic, Sr.*, and *Jackie B. Harris*, for appellees.